IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAVID DRANSFIELD,

    Plaintiff,

v.                                                                                                  Case No. _____

ROBERT MUSEUS,
in his official capacity as Town Administrator,
and in his individual capacity,

JOHN WILSON,
in his official capacity as Police Chief,
and in his individual capacity,

TOWN OF BELOIT, WISCONSIN,

And

ONE OR MORE JOHN DOES,

    Defendants.

---

## COMPLAINT

---

    Comes now, David Dransfield, by his attorney Anne T. Sulton, and for his causes of action against Defendants, alleges:

### JURISDICTION AND VENUE

    1.    This action is brought pursuant to 42 U.S.C. §§ 1981, 1983, 2000d *et seq.* (Title VI), and 1988, to redress unlawful retaliation for complaints about racial discrimination.

    2.    This Court is vested with jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. §§ 1981, 1983, and 1988, Title VI, and 28 U.S.C. §§ 1331 and 1343.

1

3. This action also is brought pursuant to Wisconsin State law. The Court is vested with jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

4. The unlawful practices alleged herein were committed within the judicial district of the United States District Court for the Western District of Wisconsin. Venue of this action is vested in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

5. Plaintiff David Dransfield has been a police officer with the Town of Beloit for 27 years. He is white. He resides within the jurisdiction of the United States District Court for the Western District of Wisconsin.

6. Defendant Robert Museus is the Town Administrator for Defendant Town of Beloit. He is white. He is one of the individuals involved in making some of the adverse decisions complained of herein. As Town Administrator, Mr. Museus develops and implements personnel policies and practices applicable to all Town employees regardless of title or rank or specific job assignment, and supervises and disciplines all Town employees regardless of title or rank or specific job assignment, including those working in the Town's Police Department, including Plaintiff and Defendant John Wilson. Mr. Museus is a final decision maker or policy maker for Defendant Town of Beloit. Mr. Museus is being sued in both his official and individual capacities.

7. Defendant John Wilson is the Chief of Police for the Town of Beloit. He is white. He is one of the individuals involved in making some of the adverse decisions complained of herein. As Town Police Chief, Mr. Wilson develops and implements personnel policies and practices applicable to all Town police officers regardless of title or rank or specific

job assignment, and supervises and disciplines all Town police officers regardless of title or rank or specific job assignment, including Plaintiff. Mr. Wilson is a final decision maker or policy maker for Defendant Town of Beloit's Police Department. Mr. Wilson is being sued in both his official and individual capacities.

8. Defendant Town of Beloit, Wisconsin is a municipal corporation or governmental entity. It employs Plaintiff and Defendants Mr. Museus and Mr. Wilson.

9. Defendants One or More John Does, at all times material hereto, was/were employee(s), representative(s) or agent(s) of Defendant Town of Beloit. He/she/they is/are one or more of the individual(s) involved in making some of the materially adverse decisions, and/or taking the materially adverse actions, complained of herein. He/she/they is/are being sued in his/her/their official and individual capacities.

**ADDITIONAL ALLEGATIONS OF FACT FOR ALL CAUSES OF ACTION**

10. Mr. Dransfield incorporates here all previous paragraphs.

11. Mr. Dransfield is fully qualified for his job.

12. For 27 years, Mr. Dransfield has been an employee of Defendant Town of Beloit, assigned to work for the Town of Beloit Police Department.

13. Six years ago, Mr. Dransfield was promoted to Sergeant.

14. At all times material hereto, Mr. Dransfield satisfactorily performed his job duties. He was assigned to train other Town of Beloit police officers.

15. Mr. Dransfield, as a sergeant, is not a member of the Town police union.

16. In 2003, Mr. Wilson was hired as the Town's police chief. He reportedly came out of retirement, moving from Arkansas to Wisconsin.

17. During and before 2008, members of the Town of Beloit's police union complained about Mr. Wilson using racial slurs in the workplace. Mr. Wilson frequently referred to African Americans as niggers.

18. Mr. Museus was aware of Mr. Wilson's frequent use of the word nigger in the workplace and was aware police officers and other Town employees were complaining that Mr. Wilson was using racist terms when speaking about non-white individuals and businesses owned by non-whites. Mr. Museus took no remedial steps.

19. In or about December 2008, members of the Town of Beloit's police union filed, with Mr. Museus, a formal written complaint against Mr. Wilson, alleging Mr. Wilson frequently was using racial slurs in the workplace, referring to African Americans as niggers, Mexicans as spicks, people from India as dot-heads and towel heads, and people from Arab nations as rag heads and sand niggers. Members of the police union also attended a Town Board meeting and complained about retaliation by Mr. Wilson. Members of the police union also alleged that Mr. Wilson, when explaining why he would not include an African American towing company on the Town's list, referred to that company's owner as a "goddamn nigger" and "fucking nigger".

20. Believing that Mr. Dransfield was supportive of the police union's complaints about Mr. Wilson, Mr. Wilson physically threatened Mr. Dransfield on three separate occasions:

a) Mr. Wilson called Mr. Dransfield a "motherfucker" and threatened to "come across the table and choke" Mr. Dransfield.

b) Mr. Wilson said to Mr. Dransfield "I ought to put this cigar out in your fucking eye."

  c) Mr. Wilson said "If I could get away with it legally you both would be dead right now."  Mr. Wilson was referring to both Mr. Dransfield and William Abbegen, another long-time Town of Beloit police officer.

  21. Mr. Dransfield informed the Town Board of Mr. Wilson's threat to kill him and the other police officer.

  22. The Town Board took no action in response to Mr. Dransfield's complaint about the threat against his life.

  23. The Town Board conducted an investigation of the police union's formal written complaint, and found Mr. Wilson had used racial slurs in the workplace.

  24. After a finding that Mr. Wilson engaged in racially discriminatory conduct while on the job, Mr. Museus and the Town Board allowed Mr. Wilson to continue his regular duties as Town Police Chief.

  25. Mr. Wilson then made decisions having an adverse impact on police union members.  Some had their work assignments changed, e.g., one man was a detective and was re-assigned to be a patrolman; others were forced to quit their jobs.

  26. In addition to complaints about Mr. Wilson's racial slurs, some police officers, including Mr. Dransfield, advocated on behalf of a mixed-race police officer.  There was one mixed-race police officer working for the Town of Beloit Police Department.  The rest of the police officers are white.  Mr. Dransfield and other police officers raised questions about why the mixed-race police officer was not allowed to complete his training.  Mr. Wilson made it clear that he did not appreciate these inquiries.

27. Mr. Wilson changed Mr. Dransfield's work schedule to the least desirable third shift with weekends, removed him from his training role, and threatened to fire him.

28. Mr. Museus was aware of these materially adverse actions being taken against Mr. Dransfield by Mr. Wilson. Mr. Dransfield asked Mr. Museus to reverse Mr. Wilson's adverse decisions. Mr. Museus approved, condoned and ratified Mr. Wilson's actions against Mr. Dransfield.

### FIRST CAUSE OF ACTION
### (42 U.S.C. §§ 1981 and 1983 AGAINST ROBERT MUSEUS)

29. Mr. Dransfield incorporates here all previous paragraphs.

30. 42 U.S.C. § 1981 protects Mr. Dransfield from retaliation for complaining about racial discrimination.

31. 42 U.S.C. § 1983 provides that every person who, under color of law, subjects, or causes to be subjected, any person to the deprivation of any rights, privileges, or immunities secured by the United States Constitution and laws, shall be liable to the party injured.

32. Mr. Dransfield's § 1981 damages claims against Mr. Museus for § 1981 violations are being brought under § 1983.

33. Mr. Museus was acting under the color of law.

34. Mr. Dransfield engaged in protected activity when he opposed racial slurs being used in the workplace and advocated on behalf of a mixed-race police officer so that he could complete his training.

35. When Mr. Museus allowed Mr. Wilson to retaliate against Mr. Dransfield, Mr. Museus knew the immediate, practical and tangible materially adverse results would include, but not be limited to: a) Mr. Dransfield would have significantly different job responsibilities,

including not being a trainer; b) because Mr. Dransfield was being transferred suddenly to the least desirable work shift and told he would be fired, it appeared to his co-workers that Mr. Dransfield had done something wrong, thereby harming his reputation; and c) Mr. Wilson's physical threats against Mr. Dransfield created a hostile working environment for Mr. Dransfield.

36. At the time Mr. Museus made the decisions to allow Mr. Wilson to retaliate against Mr. Dransfield, the laws prohibiting employment discrimination in retaliation for complaining about racial discrimination were well established. It was clear to a reasonable official in Mr. Museus' position, as Town Administrator, that his conduct violated Mr. Dransfield's rights to complain about racial discrimination and was unlawful.

37. There exists a causal connection between Mr. Dransfield's protected activity and Mr. Museus' materially adverse actions and omissions, including the temporal proximity between the dates when the police union filed their formal written complaint and Mr. Dransfield advocated on behalf of the mixed-race police officer and the dates Mr. Wilson physically threatened Mr. Dransfield and re-assigned him.

38. When Mr. Museus allowed Mr. Wilson to engage in the challenged conduct noted herein, Mr. Museus treated Mr. Dransfield less favorably and more harshly than Mr. Dransfield's similarly-situated non-complaining co-workers in the terms and conditions of Mr. Dransfield's employment in retaliation for complaining about racial discrimination.

39. The action or omission of Mr. Museus against Mr. Dransfield is an unlawful employment practice prohibited by 42 U.S.C. §§ 1981 and 1983.

40. The foregoing conduct constitutes intentional illegal discrimination prohibited by 42 U.S.C. §§ 1981 and 1983.

41. The unlawful action or omission of Mr. Museus against Mr. Dransfield, as alleged herein, was taken in malicious, willful, wanton, reckless indifference to, and reckless disregard of Mr. Dransfield's rights as guaranteed by 42 U.S.C. §§ 1981 and 1983.

42. As a direct, foreseeable, and proximate result of Mr. Museus' intentional illegal discriminatory conduct complained of herein, Mr. Dransfield suffered injuries, damages and other losses, including, but not limited to, lost wages and benefits, damage to his reputation, anxiety, personal indignity, humiliation, embarrassment, and emotional distress. These injuries and damages continue into the present and will continue into the foreseeable future.

43. Mr. Dransfield requests relief as hereinafter provided.

**SECOND CAUSE OF ACTION**
**(42 U.S.C. §§ 1981 and 1983 AGAINST JOHN WILSON)**

44. Mr. Dransfield incorporates here all previous paragraphs.

45. 42 U.S.C. § 1981 protects Mr. Dransfield from retaliation for complaining about racial discrimination.

46. 42 U.S.C. § 1983 provides that every person who, under color of law, subjects, or causes to be subjected, any person to the deprivation of any rights, privileges, or immunities secured by the United States Constitution and laws, shall be liable to the party injured.

47. Mr. Dransfield's § 1981 damages claims against Mr. Wilson for § 1981 violations are being brought under § 1983.

48. Mr. Wilson was acting under the color of law.

49. Mr. Dransfield engaged in protected activity when he opposed racial slurs being used in the workplace and advocated on behalf of a mixed-race police officer so that he could complete his training.

50. When Mr. Wilson retaliated against Mr. Dransfield, Mr. Wilson knew the immediate, practical and tangible materially adverse results would include, but not be limited to: a) Mr. Dransfield would have significantly different job responsibilities, including not being a trainer; b) because Mr. Dransfield was being transferred suddenly to the least desirable work shift and told he would be fired, it appeared to his co-workers that Mr. Dransfield had done something wrong, thereby harming his reputation; and c) Mr. Wilson's physical threats against Mr. Dransfield created a hostile working environment for Mr. Dransfield.

51. At the time Mr. Wilson retaliated against Mr. Dransfield, the laws prohibiting employment discrimination in retaliation for complaining about racial discrimination were well established. It was clear to a reasonable official in Mr. Wilson's position, as Town Police Chief, that his conduct violated Mr. Dransfield's rights to complain about racial discrimination and was unlawful.

52. There exists a causal connection between Mr. Dransfield's protected activity and Mr. Wilson's materially adverse actions, including the temporal proximity between the dates when the police union filed their formal written complaint and Mr. Dransfield advocated on behalf of the mixed-race police officer and the dates Mr. Wilson physically threatened Mr. Dransfield and re-assigned him.

53. When Mr. Wilson engaged in the challenged conduct noted herein, Mr. Wilson treated Mr. Dransfield less favorably and more harshly than Mr. Dransfield's similarly-situated

non-complaining co-workers in the terms and conditions of Mr. Dransfield's employment in retaliation for complaining about racial discrimination.

54. The action of Mr. Wilson against Mr. Dransfield is an unlawful employment practice prohibited by 42 U.S.C. §§ 1981 and 1983.

55. The foregoing conduct constitutes intentional illegal discrimination prohibited by 42 U.S.C. §§ 1981 and 1983.

56. The unlawful action of Mr. Wilson against Mr. Dransfield, as alleged herein, was taken in malicious, willful, wanton, reckless indifference to, and reckless disregard of Mr. Dransfield's rights as guaranteed by 42 U.S.C. §§ 1981 and 1983.

57. As a direct, foreseeable, and proximate result of Mr. Wilson's intentional illegal discriminatory conduct complained of herein, Mr. Dransfield suffered injuries, damages and other losses, including, but not limited to, lost wages and benefits, damage to his reputation, anxiety, personal indignity, humiliation, embarrassment, and emotional distress. These injuries and damages continue into the present and will continue into the foreseeable future.

58. Mr. Dransfield requests relief as hereinafter provided.

### THIRD CAUSE OF ACTION
### (ASSAULT AGAINST JOHN WILSON)

59. Mr. Dransfield incorporates here all previous paragraphs.

60. In Wisconsin, a civil assault includes oral threats to show violence to another without striking him. Wisconsin State law protects Mr. Dransfield from apprehension of harmful or offensive contact with his body.

61. Mr. Dransfield believed Mr. Wilson intended to do him bodily harm when Mr. Wilson physically threatened Mr. Dransfield on three separate occasions:

      a)      Mr. Wilson called Mr. Dransfield a "motherfucker" and threatened to "come across the table and choke" Mr. Dransfield.

      b)      Mr. Wilson said to Mr. Dransfield "I ought to put this cigar out in your fucking eye."

      c)      Mr. Wilson said "If I could get away with it legally you both would be dead right now."

62.      The unlawful action of Mr. Wilson against Mr. Dransfield, as alleged herein, was taken in malicious, willful, wanton, reckless indifference to, and reckless disregard of Mr. Dransfield's rights as guaranteed by Wisconsin State laws prohibiting civil assault.

63.      As a direct, foreseeable, and proximate result of Mr. Wilson's intentional illegal assaultive conduct complained of herein, Mr. Dransfield suffered injuries, damages and other losses, including, but not limited to, anxiety, personal indignity, humiliation, embarrassment, and emotional distress. These injuries and damages continue into the present and will continue into the foreseeable future.

64.      Mr. Dransfield requests relief as hereinafter provided.

**FOURTH CAUSE OF ACTION**
**(42 U.S.C. §§ 1981 and 1983 AGAINST TOWN OF BELOIT, WISCONSIN)**

65.      Mr. Dransfield incorporates here all previous paragraphs.

66.      42 U.S.C. § 1981 protects Mr. Dransfield from retaliation for complaining about racial discrimination.

67.      42 U.S.C. § 1983 provides that every person who, under color of law, subjects, or causes to be subjected, any person to the deprivation of any rights, privileges, or immunities secured by the United States Constitution and laws, shall be liable to the party injured.

68. Mr. Dransfield's § 1981 damages claims against the Town for § 1981 violations are being brought under § 1983.

69. The Town of Beloit was acting under the color of law.

70. Mr. Dransfield engaged in protected activity when he opposed racial slurs being used in the workplace and advocated on behalf of a mixed-race police officer so that he could complete his training.

71. The Town of Beloit was aware of Mr. Dransfield's complaints of racial discrimination and retaliation, including the physical threats being made by Mr. Wilson against Mr. Dransfield. The Town had an opportunity to prevent the harm from occurring, but took no reasonable remedial steps to address Mr. Dransfield's complaints of intentional illegal discrimination. The Town's failure to act caused Mr. Dransfield to suffer harm.

72. The Town approved, condoned, and/or ratified the intentional illegal discriminatory conduct of its employees, Mr. Museus and Mr. Wilson, and/or the Town purposely ignored its employees' intentional illegal discriminatory conduct.

73. Alternatively and in combination, the Town's deliberately indifferent failure to ensure adequate EEO-compliance, monitoring and/or supervision of Town employees' conduct has caused, and threatens to continue causing, violations of Mr. Dransfield's statutory rights.

74. The Town violated 42 U.S.C. § 1983, when acting under the color of law, it intentionally illegally denied Mr. Dransfield's rights to be free from retaliation as guaranteed by 42 U.S.C. § 1981.

75. The Town's acts and omissions were carried out pursuant to its policies and/or practices.

76. The foregoing conduct constitutes intentional illegal discrimination prohibited by 42 U.S.C. §§ 1981 and 1983.

77. The unlawful actions taken against Mr. Dransfield, as alleged herein, were taken in malicious, willful, wanton, reckless indifference to, and reckless disregard of Mr. Dransfield's rights as guaranteed by 42 U.S.C. §§ 1981 and 1983.

78. As a direct, foreseeable, and proximate result of the Town's intentional illegal discriminatory conduct complained of herein, Mr. Dransfield suffered financial losses, injuries, and other damages.  These injuries and damages continue into the present and will continue into the foreseeable future.

79. Mr. Dransfield requests relief as hereinafter provided.

**FIFTH CAUSE OF ACTION**
**(42 U.S.C. §§1983 AND 2000d, TITLE VI AGAINST TOWN OF BELOIT, WISCONSIN)**

80. Mr. Dransfield incorporates here all paragraphs alleged above.

81. 42 U.S.C. § 1983 provides that every person who, under color of law, subjects, or causes to be subjected, any person to the deprivation of any rights, privileges, or immunities secured by the United States Constitution and laws, shall be liable to the party injured.

82. The Town was acting under the color of law.

83. At the time of the Town's actions complained of herein, there were federal laws clearly establishing Mr. Dransfield's rights to be free from retaliation for complaining about racial discrimination, including 42 U.S.C. § 2000d, Title VI, and the Town was aware of these rights.

84. Title VI protects Mr. Dransfield from retaliation for complaining about racial discrimination. Title VI states that no person in the United States shall be discriminated against

on the basis of race, color, or national origin by an entity receiving Federal financial assistance. It provides a private right of action for disparate treatment claims of racial discrimination.

85. On information and belief, the Town receives Federal financial assistance.

86. Mr. Dransfield brings his Title VI claim of disparate treatment per 42 U.S.C. § 1983.

87. The Town knew Mr. Wilson was taking materially adverse actions against Mr. Dransfield in retaliation for Mr. Dransfield opposing racial discrimination. The Town approved, condoned and ratified the materially adverse actions taken against Mr. Dransfield by Mr. Wilson.

88. The foregoing conduct constitutes intentional illegal discrimination prohibited by Title VI.

89. The unlawful actions taken against Mr. Dransfield, as alleged herein, were taken in malicious, willful, wanton, reckless indifference to, and reckless disregard of Mr. Dransfield's rights as guaranteed by Title VI.

90. As a direct, foreseeable, and proximate result of the Town's intentional illegal discriminatory conduct complained of herein, Mr. Dransfield suffered financial losses, injuries, and other damages, including, but not limited to, emotional distress and damage to his reputation. These injuries and damages continue into the present and will continue into the foreseeable future.

91. Mr. Dransfield requests relief as hereinafter provided.

## SIXTH CAUSE OF ACTION
### (NEGLIGENT HIRING, TRAINING AND SUPERVISION OF EMPLOYEES AGAINST TOWN OF BELOIT, WISCONSIN)

92. Mr. Dransfield incorporates here all paragraphs alleged above.

93. The Town had a duty to exercise reasonable care in the hiring, training, and supervision of its employees Mr. Museus and Mr. Wilson. This duty includes the responsibility to make certain the Town's employees are properly trained in equal employment laws. This duty also includes properly monitoring and supervising employees to make certain employees are complying with equal employment laws. The Town had this duty, in part, because it was foreseeable that employees, including Mr. Museus and Mr. Wilson, entrusted with supervision and discipline of subordinate employees, including Mr. Dransfield, if not properly trained and supervised would cause the type of harm experienced by Mr. Dransfield.

94. Mr. Wilson retaliated against Mr. Dransfield, including threatening to kill him. Mr. Museus took no remedial steps and allowed Mr. Wilson to take materially adverse actions against Mr. Dransfield. This is a cause-in-fact of Mr. Dransfield's injuries and other damages.

95. The Town breached its duties to Mr. Dransfield by negligently failing to hire, train and supervise its employees Mr. Museus and Mr. Wilson. The Town's breach of its duties is causally connected to their employees' illegal actions against Mr. Dransfield, which caused the herein complained of injuries and damages.

96. The Town's breach of its duty to hire competent staff, to appropriately train them, and to properly supervise their work directly and proximately caused and/or resulted in the alleged harms and damages to Mr. Dransfield.

97. Furthermore, and in the alternative, the Town was negligent and is liable for the negligent acts and/or omissions of their employees because the Town knew or should have known that their employees would subject Mr. Dransfield to an unreasonable risk of harm without proper training and/or supervision. The Town knew or should have known this because it was aware and had notice of prior incidents, and, therefore, had reason to anticipate the complained of conduct.

98. The Town had a special opportunity to prevent the harm to Mr. Dransfield because members of the police union appeared at a Town Board meeting and complained of retaliation by Mr. Wilson.

99. As a direct, foreseeable, and proximate result of the Town's negligent hiring, training and supervision of Mr. Museus and Mr. Wilson, Mr. Dransfield suffered injuries and damages, including, but not limited to, emotional distress and damage to his reputation. These injuries and damages continue into the present and will continue into the foreseeable future.

100. Mr. Dransfield requests relief as hereinafter provided.

**RELIEF REQUESTED**

WHEREFORE, Mr. Dransfield respectfully requests this honorable Court enter judgment for him on his Complaint against Defendants, jointly and severally, and provide the following relief:

A. A declaratory judgment that the practices complained of herein are unlawful and violate 42 U.S.C. §§ 1981, 1983, and 1988, Title VI, and State laws, and an injunction prohibiting Defendants from violating these laws;

B.  An order that he be re-instated to his position as a training Sergeant with first shift hours, with salary and benefits at the level he would have received had he not been removed from this position;

C.  An order that any and all adverse information inserted into his personnel file(s) by Mr. Wilson and/or Mr. Museus be removed from his personnel file(s);

D.  An order that Defendants pay, jointly and severally, all damages Mr. Dransfield sustained as a result of Defendants' illegal conduct, including, but not limited to, compensatory damages for lost wages and benefits, damages to his reputation, lost promotional opportunities, anxiety, emotional distress, humiliation, embarrassment, and mental anguish, plus pre- and post-judgment interest and other statutory penalties, plus punitive damages;

E.  Costs of action incurred herein, including reasonable attorneys' fees and expert fees to the extent available under Federal and State laws;

F.  Retain jurisdiction over this action to assure full compliance with the Orders of the Court; and

G.  Such other and further legal and equitable relief as this Court deems just and reasonable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all causes of action and claims with respect to which he has a right to jury trial.

Dated this 22nd day of September, 2010.

*/s/ Anne T. Sulton*
Anne T. Sulton

Mailing Address:
Sulton Law Offices
Post Office Box 371335
Milwaukee, Wisconsin 53237
Telephone: (360) 870-6000
E-mail: annesulton@gmail.com

**Plaintiff's Attorney**